1
2
3
4
5
6
7

8       IN THE UNITED STATES DISTRICT COURT

9       FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   STORUS CORPORATION,                        No. C-06-2454 MMC

12              Plaintiff,                      **ORDER GRANTING IN PART AND
                                                DENYING IN PART PLAINTIFF'S**
13       v.                                     **MOTION FOR PARTIAL SUMMARY
                                                JUDGMENT**
14   AROA MARKETING, INC., et al.,

15              Defendants

16   _____/

17

18       Before the Court is plaintiff Storus Corporation's ("Storus") Motion for Partial

19   Summary Judgment of Trademark Infringement, filed December 28, 2007.  Defendants

20   Aroa Marketing, Inc. ("Aroa") and Skymall, Inc. ("Skymall") have jointly filed opposition, to

21   which Storus has replied.  Having read and considered the papers filed in support of and in

     opposition to the motion, the Court rules as follows.[1]

22                              **BACKGROUND**

23
         Storus has marketed and sold a money clip under the mark "Smart Money Clip"

24   since 1997.  (See Kaminski Decl., filed December 28, 2007, ¶ 4.)  Said money clip is

25   covered by a patent owned by Storus, specifically, by United States Patent 6,082,422, (see

26   id. ¶¶ 2, 4), which patent "relates to a combination money clip and card holder adapted to

27

28   _____

         [1]By order filed February 7, 2008, the Court took the matter under submission.

retain paper currency as well as [to] removably store flexible cards, e.g., credit cards, and sized to be conveniently carried in a pocket or purse," (see id. Ex. C at col.1, ll. 17-21). Storus sells the Smart Money Clip through "various retail channels, including internet stores, and mail order catalogs, 'brick and mortar' stores and television shopping channels." (See id. ¶ 5.)[2]

In its First Amended Consolidated Complaint, Storus alleges, as its Sixth Claim, that defendants have infringed Storus' mark Smart Money Clip by using said mark in connection with sales of products that compete with Storus' money clips. By the instant motion, Storus seeks partial summary judgment on the issue of defendants' liability as to the Sixth Claim. Specifically, Storus asserts, the manner in which defendants have used the mark "Smart Money Clip" in connection with a "search engine" creates "initial interest confusion with Storus' trademark." (See Pl.'s Mot. at 9:26-27; 11:2-10.)

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (quoting Rule 56(c)). "When the moving party has carried its burden under

---

[2]Defendants do not dispute any of the facts set forth in the preceding paragraph.

1  Rule 56(c), its opponent must do more than simply show that there is some metaphysical

2  doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the evidence is merely

3  colorable, or is not significantly probative, summary judgment may be granted." Liberty

4  Lobby, 477 U.S. at 249-50 (citations omitted). "'[I]nferences to be drawn from the

5  underlying facts," however, "must be viewed in the light most favorable to the party

6  opposing the motion.'" See Matsushita, 475 U.S. at 587 (quoting United States v. Diebold,

7  Inc., 369 U.S. 654, 655 (1962)).

8  **DISCUSSION**

9        As noted, Storus seeks partial summary judgment on its claim for trademark

10  infringement. To establish a trademark infringement claim, the plaintiff must establish that

11  the defendant has used a mark "confusingly similar to a valid, protectable trademark of [the

12  plaintiff]." See Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.

13  3d 1036, 1046 (9th Cir. 1999).

14  **A. Valid, Protectable Trademark**

15        On March 20, 2001, the Patent and Trademark Office ("PTO"), upon application by

16  Storus, registered Storus' mark Smart Money Clip for use in connection with "cases with

17  clips adapted to hold and retain personal identification, money both paper and coin, credit

18  cards, memo items, business cards, personal accessories, and the like and adapted to be

19  carried in a user's pocket, purse, handbag or pack." (See Kaminski Decl. Ex. D.)

20        A registration "constitutes prima facie evidence of the validity of the registered mark

21  and of [the plaintiff's] exclusive right to use the mark on the goods and services specified in

22  the registration." See Brookfield, 174 F. 3d at 1047. The registration "creates a rebuttable

23  presumption that a trademark is valid, that is, either inherently distinctive or descriptive with

24  secondary meaning, and therefore, protectable under federal trademark law." See

25  Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 502 F. 3d 504, 513 (6th Cir. 2007); Yellow

26  Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F. 3d 925, 927 (9th Cir. 2005)

27  (holding "inherently distinctive" marks and "descriptive marks" with "secondary meaning"

28  entitled to trademark protection).

3

1   Here, defendants argue the Smart Money Clip is descriptive, under the theory that

2   "smart" is a "generally laudatory" descriptive term not entitled to protection in the absence

3   of a showing by Storus of secondary meaning.  See, e.g., Hoover Co. v. Royal Appliance

4   Mfg. Co., 238 F. 3d 1357, 1360 (Fed. Cir. 2001) (holding mark "Number One in Floorcare"

5   was "generally laudatory phrase" not entitled to trademark protection in light of absence of

6   evidence of secondary meaning; noting, "Self-laudatory or puffing marks are regarded as a

7   condensed form of describing the character or quality of the goods.").

8       Defendants fail to offer any evidence that "Smart Money Clip" is understood as a

9   "generally laudatory term," and the cases identifying terms found to be "generally laudatory"

10  concerned marks distinguishable from Storus' mark.  See, e.g., In re Best Software, Inc.,

11  58 U.S.P.Q. 2d 1314 (T.T.A.B. 2001) (setting forth as examples of generally laudatory

12  marks "The Best Beer in America" and "The Ultimate Bike Rack").  Defendants also fail to

13  explain why "smart" is descriptive of the function performed by Storus' money clips,

14  specifically, having the ability to hold cash and credit cards simultaneously.  Even

15  assuming, arguendo, "Smart Money Clip" is descriptive in nature, the PTO is presumed to

16  have found the mark acquired secondary meaning, see Leelanau, 502 F. 3d at 514 (holding

17  where mark is descriptive, "its registration must have been on the basis of the [ ] PTO's

18  determination that [the] mark had obtained a secondary meaning"); consequently,

19  defendants have the burden to "prove the absence of secondary meaning," see id.

20  Defendants fail to offer any evidence to support a finding of an absence of secondary

21  meaning, and, thus, fail to create a triable issue of fact.

22      Accordingly, the Court finds Storus has shown no material issue exists as to the

23  validity of the mark Smart Money Clip.

24  **B.  Likelihood of Confusion**

25      As noted, Storus argues the manner in which defendants have used "Smart Money

26  Clip" has created "initial interest confusion."

27      "Initial interest confusion occurs when the defendant uses the plaintiff's trademark in

28  a manner calculated to capture initial consumer attention, even though no actual sale is

4

finally completed as a result of the confusion." Interstellar Starship Services, Ltd. v. Epix

Inc., 304 F. 3d 936, 941 (9th Cir. 2002) (internal quotation and citation omitted).  For

example, initial interest confusion can occur where a defendant includes a plaintiff's mark in

"metatags" found on the defendant's website, thereby causing consumers who enter the

plaintiff's mark into a search engine to obtain a list of results that includes the defendant's

website, after which some of those consumers will select defendant's website from the list.

See Brookfield, 174 F. 3d at 1058, 1062-65 (holding "Lanham Act bars [defendant] from

including in its metatags any term confusingly similar with [plaintiff's] mark").  "Although

there is no source confusion in the sense that consumers know they are patronizing

[defendant] rather than [plaintiff], there is nevertheless initial interest confusion in the sense

that, by using [plaintiff's mark] to divert people looking for [plaintiff's product] to its web site,

[defendant] improperly benefits from the goodwill that [plaintiff] developed in its mark."  See

id.

        In determining whether a defendant's use of a mark creates initial interest confusion,

a trier of fact considers the eight "Sleekcraft factors": "(1) the similarity of the marks; (2) the

relatedness or proximity of the two companies' products or services; (3) the strength of the

registered mark; (4) the marketing channels used; (5) the degree of care likely to be

exercised by the purchaser in selecting goods; (6) the accused infringers' intent in selecting

its mark; (7) evidence of actual confusion; and (8) the likelihood of expansion in product

lines."  See Interstellar Starship, 304 F. 3d at 942.[3]  "[I]n the context of the Web, the three

most important Sleekcraft factors are (1) the similarity of the marks, (2) the relatedness of

the goods or services, and (3) the parties' simultaneous use of the Web as a marketing

channel."  See id. (internal quotation and citation omitted).  "When this 'controlling troika,' or

'internet trinity,' suggests confusion is likely, the other factors must weigh strongly against a

_____

        [3]In Sleekcraft, the Ninth Circuit listed the above factors in a different numerical
sequence.  See AMF Inc. v. Sleekcraft, 599 F. 2d 341, 348-49 (9th Cir. 1979).  In applying
the Sleekcraft factors, courts traditionally have numbered and discussed those factors
consistent with their relative importance to the particular case under consideration.  See,
e.g., GoTo.com, 202 F. 3d at 1205.

1  likelihood of confusion to avoid the finding of infringement."  Id. (internal quotation, citation,

2  and alteration omitted).  Consequently, where the "factors of the internet trilogy" weigh

3  against the defendant, a finding of likelihood of confusion is proper unless the defendant

4  shows the remaining Sleekcraft factors "weigh strongly against a likelihood of confusion."

5  See Perfumebay.com v. eBay Inc., 506 F. 3d 1165, 1174-75 (Fed. Cir. 2007); see also

6  GoTo.Com, Inc. v. Walt Disney Co., 202 F. 3d 1199, 1207 (Fed. Cir. 2002) (holding where

7  "marks are similar, [the parties] offer similar services, and [the parties] both use the web as

8  their marketing channel," confusion is "indeed likely").

9      **1.  Aroa**

10          **a.  Undisputed Facts**[4]

11      Aroa sells "money clip products" under the mark Steinhausen, (see Andara Decl.,

12  filed December 28, 2007, Ex. E at 59), on the website www.steinhausenonline.com, (see id.

13  Ex. G).  From 1998 to January 2001, Aroa also sold, pursuant to an agreement with Storus,

14  Storus' Smart Money Clip.  (See Kaminski Decl. ¶¶ 7-8.)

15      Google Inc., an internet search engine, operates an advertising program titled

16  "AdWords," under which an account holder can "create ads and choose keywords."  (See

17  Choi Decl., filed December 28, 2007, ¶ 4.)  Under this program, "[w]hen people search on

18  Google using one of the account holder's keywords, the account holder's ad may appear

19  next to the search results, and people can then click on the account holder's ad."  (See id.)

20  Aroa, an AdWords account holder, chose various keywords for inclusion in the program,

21  including "smart money clip," and provided Google with an ad to be generated when a user

22  searched using any of the chosen keywords.  (See id. Ex. B at 3, 5.)  In particular, under

23  the AdWords program, if a consumer searched on Google for the phrase "smart money

24  //

25

26      [4]Defendants offer no evidence to dispute any of the facts set forth in the following
27  section.  Defendants have, however, raised evidentiary objections to some of the evidence
   from which such facts are derived.  To the extent the Court has relied on any such
28  evidence, the objections thereto are overruled for the reasons stated by Storus.  To the
   extent the Court has not relied on such evidence, the Court does not reach the objections.

clip," the following Aroa ad may appear on the results page:

Smart Money Clip
www.steinhausenonline.com   Elegant Steinhausen accessories.  Perfect to add to any collection.

(See Andara Decl. Ex. G.)[5]  The "Smart Money Clip" portion of the ad is underlined and set forth in a larger font than that used in the rest of the text in the ad.  (See id.)

During the period from November 13, 2006 to October 12, 2007, the above advertisement was displayed 36,164 times in response to a search for "smart money clip," and such displays resulted in 1,374 "clicks," i.e., the consumer "clicked on [Aroa's] ad after viewing the page where it was displayed."  (See Choi Decl. ¶ 5, Ex. B at 4-5; Andara Decl. Ex. E. at STOR00673-74.)

**b.  Analysis**

In light of the above undisputed facts, the Court finds Aroa used a mark identical to Storus' mark with respect to the same type of product, a money clip, and that both Storus and Aroa marketed their respective money clip products over the internet.  Defendants' argument, that the first of the "factors of the internet trilogy," similarity of the marks, nevertheless weighs in Aroa's favor, is unpersuasive.  Although, as defendants point out, Aroa's Google ad includes a reference to Aroa's mark "Steinhausen," the subject ad, as noted, begins with a mark identical to Storus' mark, underlined, and in a font size larger than that used for any other text in the ad.  Defendants appear to argue that consumers would know Steinhausen is the mark of a company different from that of the company owning the Smart Money Clip mark, and, thus, if consumers proceed to Aroa's site, the consumers would not be confused as to the source.  Defendants offer no evidence, however, to support such a finding.  Moreover, even if such evidence had been offered, defendants' argument would be unavailing.  As noted, under the "initial interest confusion"

---

[5]Storus asserts, and defendants do not dispute, that defendants stopped using "smart money clip" as a keyword in the AdWorks program at some point after the instant action was filed.  Consistent with Storus' assertion, documents produced by Google, in the instant action, refer to the "status" of Aroa's keyword "smart money clip" as "paused," as opposed to "active."  (See Choi Decl. Ex. G at 5.)

theory of trademark liability, "source confusion" need not occur; rather, in the internet

context, the wrongful act is the defendant's use of the plaintiff's mark to "divert" consumers

to a website that "consumers know" is not Storus' website. See Brookfield, 174 F. 3d at

1062.[6]

Accordingly, the Court finds no triable issue of fact exists with respect to any of the

three "factors of the internet trilogy," each of which weighs in favor of Storus. See

Perfumebay.com, 506 F. 3d at 1174. Consequently, the burden shifts to defendants to

offer evidence to support a finding that the remaining factors "weigh strongly against a

likelihood of confusion." See id. at 1174-75.

In that regard, defendants offer no evidence to show a lack of actual initial interest

confusion. The only evidence relevant to this factor is offered by Storus, specifically,

undisputed evidence that during the period from November 13, 2006 to October 12, 2007,

when Aroa's ad appeared thousands of times in response to searches for "smart money

clip," such ad generated 1,374 "clicks." (See Choi Decl. ¶ 5, Ex. B at 4-5; Andara Decl. Ex.

E. at STOR00673-74.) In other words, on 1,374 occasions, consumers who were

searching for a website by using Storus' mark were, in fact, "diverted" to an Aroa website

selling money clips that compete with Storus' money clips. Such diversion constitutes the

"initial interest confusion" prohibited by the Lanham Act. See Brookfield, 174 F. 3d at 1062,

1065.

Defendants offer no evidence as to their intent in selecting Storus' mark as a

keyword in Google's AdWords program. Again, the only evidence relevant to such factor is

offered by Storus, specifically, evidence that Aroa, before it began using "smart money clip"

---

[6]Defendants rely on the concurring opinion in Playboy Enterprises, Inc. v. Netscape Communications Corp., 354 F. 3d 1020 (9th Cir. 2004), in which Judge Berzon expressed concern that Brookfield was "wrongly decided" and "may one day, if not now, need to reconsidered en banc." See id. at 1035. Nevertheless, this Court is bound by Brookfield. Moreover, Judge Berzon's concern pertained to application of the holding in Brookfield to a defendant who, having used the plaintiff's mark as a keyword, causes consumers to view an internet ad "clearly labeled" as an ad for the defendant. See id. This concern is inapplicable to the instant matter; Aroa's advertisement is not "clearly labeled" as an ad for Aroa, given that the largest words in the advertisement consist of a mark identical to Storus' mark.

as a keyword in Google's AdWords program, had actual knowledge that Storus used the mark "Smart Money Clip" to market money clips. (See Kaminski Decl. ¶ 7.)

With respect to the strength of the Smart Money Clip mark, defendants rely on their argument that Storus' mark is descriptive and, consequently, weak. "Whether the mark is weak or not is of little importance," however, "where the conflicting mark is identical and the goods are closely related," see Brookfield, 174 F. 3d at 1059 (internal quotation and citation omitted), which is precisely the situation presented herein.

Defendants concede the "degree of consumer care" favors Storus, because "consumer care for inexpensive products is expected to be quite low." (See Defs.' Opp. at 14:25-27.) The remaining factor, "likelihood of expansion," is, in the instant case, "irrelevant" because the goods sold by the plaintiff and the defendant are "related." See Playboy Enterprises, 354 F. 3d at 1029.

In sum, there is no triable issue with respect to any of the three "factors of the internet trilogy," and defendants have failed, on behalf of Aroa, to make any showing, let alone the requisite "strong" showing, that the remaining factors weigh against a finding of a likelihood of confusion. Under the circumstances, the Court finds Storus has shown no material issue exists as to a likelihood of confusion by reason of Aroa's having used Google's AdWords program in the above-described manner.[7]

**2. Skymall**

**a. Undisputed Facts**

Skymall sells products to consumers through its website, www.skymall.com. (See Andara Decl. Ex. M, last page, unnumbered.) The products sold thereon include "apparel, business accessories, computer products, electronic equipment, automobile accessories,

---

[7]The Court makes the same finding irrespective of whether the Court employs a burden-shifting approach as set forth in Interstellar Starship and Perfumebay.com, or considers each factor without burden-shifting. See, e.g., Playboy Enterprises, 354 F. 3d at 1026-29. As discussed above, the only evidence offered with respect to five of the Sleekcraft factors is undisputed and each such factor weighs in favor of Storus; defendants concede a sixth factor weighs in favor of Storus; a seventh factor is of little importance; and the eighth factor is irrelevant.

1  gift items, collectable items, housewares, home-furnishings, personal-hygiene products,

2  health-care products, fitness products, food items, pet accessories, travel accessories,

3  seasonal items, gift-certificates and other general merchandise." (See Schewe Decl., filed

4  January 11, 2008, Ex. 2 at 8.)  Skymall's website has a search engine that consumers can

5  use to search the Skymall website.  (See Andara Decl. Ex. M at 93:21-23.)  Among the

6  products Skymall has sold are "Gadget Universe" money clips supplied by Aroa.  (See id.

7  Ex. L at 13:3-14, 54:12-15, 84:11-19; Ex. M, last unnumbered page.)  On July 14, 2005,

8  Skymall, on its website, offered for sale a Gadget Universe money clip; the description of

9  said product included, in two places, the phrase "smart money clip."  (See id. Ex. M at

10  91:21-92:10.)

11                    **b. Other Evidence**

12        At his deposition, Skymall's Chief Financial Officer, Dick Larson ("Larson"), was

13  asked whether, if a consumer used Skymall's search engine to search for the term "Smart

14  Money Clip," a webpage showing one of Aroa's money clips would come up; Larson

15  responded, "I would expect [Aroa's] product to come up."  (See id. Ex. M at 94:10-12.)  At

16  her deposition, Skymall's Customer Service Manager, Jeanette Watte ("Watte"), was

17  asked, "[I]f you typed in 'Smart Money Clip,' do you believe that based on that search

18  engine it would bring you [Aroa's] product"; Watte responded, "Today it would, probably."

19  (See id. Ex. N at 19:23-20:2.)[8]

20                    **c. Analysis**

21        With respect to Skymall, Storus' theory of liability is that if a consumer enters the

22  phrase "smart money clip" in Skymall's search engine, the consumer would be directed to a

23  page, in what is essentially an electronic catalog, on which Skymall offers for sale an Aroa

24  money clip and on which the words "smart money clip" appear in conjunction with such

25  offer.  Put another way, its is Storus' theory that when a consumer asks if Skymall offers a

26

27        [8]Watte's deposition was taken September 19, 2007.  She also testified that "the
search functionality [of Skymall's search engine] has been enhanced so that [customer
28  service employees] can locate products easier."  (See id. Ex. N at 20:4-8.)

"Smart Money Clip," Skymall answers, "yes," and directs the consumer to a page offering

an Aroa money clip. Relying on a claim of initial interest confusion under <u>Brookfield</u> and

the above-described deposition testimony offered by Larson and Watte, Storus argues

such theory can be established as a matter of law. The Court disagrees.

Although Skymall conceded having, on July 14, 2005, a webpage containing the

phrase "smart money clip" in a description of an Aroa money clip, Skymall has not

conceded that, at that time, a consumer who entered "smart money clip" in the Skymall

search engine would have been directed to that particular page. All that Skymall conceded,

in the above-referenced deposition testimony, is that at present or, at best, at some

unspecified time, if a consumer were to enter "smart money clip" in Skymall's search

engine, the consumer would likely be directed to a webpage depicting an Aroa product.[9]

Critically, Storus points to no concession by Skymall that such a consumer would be

directed to a page containing the phrase "smart money clip," let alone to a page identical to

that found on Skymall's website on July 14, 2005. Indeed, it appears, from the limited

evidence submitted, that a page offering an Aroa money clip will appear as a search result

solely because the consumer searches using the phrase "money clip," irrespective of

whether the consumer adds the word "smart" to the search term and irrespective of

whether the page contains the word "smart." (<u>See</u> <u>id.</u> Ex. M at 93:18-94:9.) Put another

way, although the evidence is undisputed that, in July 2005, Skymall's catalog contained a

webpage that included the words "smart money clip," the record reflects no evidence, or at

[9]A defendant can only be liable for trademark infringement if it engages in an unconsented "use" of another's mark. <u>See</u> 15 U.S.C. § 1114(1). Such "use," in a claim of the type alleged against Skymall, could be proved, e.g., by evidence showing the defendant directs a consumer who searches for "smart money clip" to a webpage on which it offers a competing money clip, and where that page contains the phrase "smart money clip," either expressly stated thereon or in a metatag. Here, Storus offers no evidence as to how Skymall's search engine works; specifically, Storus offers no evidence, or even argues, that Skymall's search engine directs a searching consumer to its pages based on metatags found on those pages, or by some similar mechanism not visible to the consumer by which Skymall itself makes "use" of the mark "smart money clip." Consequently, based on the record before the Court, Storus can only establish the requisite "use" if it proves Skymall's search engine directs a consumer searching for "smart money clip" to a page in its catalog that expressly contains the phrase "smart money clip."

11

1 best a triable issue, with respect to whether, at that time, Skymall had a search engine that

2 would direct consumers to that page if they were to enter the term "smart money clip."

3 Conversely, although there is evidence that, at the present time, Skymall's search engine

4 would direct such consumers to a page advertising an Aroa money clip, there is no

5 evidence that, at this time, any such page contains the words "smart money clip." In sum,

6 the inquiry of Larson and Watte at their respective depositions is too imprecise to support,

7 as a matter of law, the inference Storus seeks to draw.

8 Accordingly, the Court finds Storus has failed to show no material issue of fact exists

9 as to a likelihood of initial interest confusion based on Skymall's search engine.

10 **CONCLUSION**

11 For the reasons stated above, Storus' motion for partial summary judgment of

12 trademark infringement is hereby GRANTED in part and DENIED in part, as follows:

13 1. The motion is GRANTED and Storus shall have judgment in its favor as against

14 Aroa on the issue of trademark infringement, specifically, that Aroa's use of Storus' mark in

15 connection with Google AdWords is infringing.

16 2. In all other respects, the motion is DENIED.

17 **IT IS SO ORDERED.**

18

19 Dated: February 15, 2008

MAXINE M. CHESNEY
United States District Judge

20

21

22

23

24

25

26

27

28